[636 NYS2d 747]

DIME SAVINGS BANK OF NEW YORK, F.S.B., Respondent, v MICHAEL PESCE, Also Known as MICHAEL A. PESCE, Defendant, BOARD OF MANAGERS OF THE HUDSON VIEW WEST CONDOMINIUM, Respondent, and BATTERY PARK CITY AUTHORITY, Intervenor-Appellant.

First Department, December 28, 1995

### APPEARANCES OF COUNSEL

*Paul T. Williams, Jr.,* of counsel, New York City *(Robert R. Reed* and *Emily M. Berkowitz* on the brief; *William & Harris,* attorneys), for intervenor-appellant.

*Michael P. Amodio* of counsel, Uniondale *(Douglas E. Barzelay,* attorney), for Dime Savings Bank of New York, F.S.B., respondent.

*Carol W. Duffy* of counsel, New York City *(James E. Schwartz* on the brief; *Carb, Luria, Glassner, Cook & Kufeld, L. L. P.,* attorneys), for Board of Managers of the Hudson View West Condominium, respondent.

### OPINION OF THE COURT

Rosenberger, J. P.

The Battery Park City Authority (BPCA), a public benefit corporation created to develop a commercial and residential community known as Battery Park City, is the fee owner and lessor of a 92-acre tract of land on the lower West Side of Manhattan. For flexibility in the administration of this intended community, BPCA subdivided portions of this property and leased it, under long-term ground leases, to private entities for development.

In December 1984, BPCA entered into one such lease with Hudson View Towers Associates (Hudson), pursuant to which

Hudson was to develop the tract located at 300 Albany Street, and to convert a newly constructed apartment house to condominium ownership.[1] The resulting condominium, authorized by Real Property Law § 339-e (12), and designated a "qualified leasehold condominium", differs from most in that each unit's ownership is based not upon a fee simple estate, but upon the long-term lease between Hudson and BPCA.[2]

In December 1986, Michael Pesce purchased a condominium unit sponsored by Hudson[3], which he financed by obtaining a mortgage from the Dime Savings Bank of New York (Dime).

---

1. Sections of the ground lease between BPCA and Hudson which assist an understanding of the relationship between these parties are as follows:

Section 42.07: designates Hudson's Board of Managers as agent of unit owners to collect each unit owner's proportionate share of the rental owed to BPCA, and to pay such amount to BPCA. Under this section, upon a unit owner's default, the Board of Managers was required to deliver to BPCA a default certificate describing the nature of the default and identifying any mortgagee. Within 10 days after delivery of a default certificate, BPCA was permitted to elect its remedies under the lease directly against the unit owner, and provided that BPCA could give any mortgagee an additional 20 days to cure the default. BPCA was then permitted to commence an action against the defaulting unit owner without any further notice to the mortgagee.

Section 24.12: provides that upon anticipated or actual breach by the tenant, the landlord "shall have the right to invoke all rights and remedies allowed at law or in equity or by statute or otherwise as though re-entry, summary proceedings, and other remedies were not provided for in this Lease".

Section 42.09 (c): as amended August 30, 1985, provides as follows: "In addition to the rights and remedies granted to Landlord pursuant to the provisions of this Lease, each Unit Owner hereby grants to Landlord, effective only upon a Unit Owner Default and continuing until the payment to Landlord of the Deficiency Amount, a lien on such Unit (a 'Landlord's Lien') which Landlord's Lien shall be prior to all other liens on such Unit * * * except for Taxes, Impositions, the lien granted to the Board of Managers pursuant to the condominium Act and liens granted to Governmental Authorities which, pursuant to applicable law, are granted a priority, *and all sums unpaid on a first mortgage of record.*" (Emphasis supplied.)

2. Article 28 of the Declaration of Condominium, signed by BPCA, provides: "The execution of this declaration by Lessor is solely to evidence Lessor's consent to the submission of the Property held by Sponsor pursuant to the Lease to the provisions of the Condominium Act and the establishment of a regime for condominium ownership of the Property as set forth and in the by-laws."

3. The Hudson View West Condominium Offering Plan provides, in pertinent part, that: "the Landlord shall have a lien, against the Unit of a defaulting unit owner, to be effective only upon the Unit Owner's default. The lien shall continue until the payment to Landlord of amount of unpaid rental (the 'Deficiency Amount') and shall be prior to all other liens on the Unit *except all sums unpaid on a first mortgage of record * * * the lien of the Board of Managers for unpaid Common Charges"* (emphasis supplied).

Pursuant to the unit owner's purchase agreement, Mr. Pesce was assigned a leasehold interest in the unit and an undivided leasehold interest in the common elements, both pursuant to a separate document called the "Unit Assignment Agreement". The Unit Assignment Agreement was recorded in a manner similar to a deed, and it bound the unit owner to perform as required in the ground lease between BPCA and Hudson. Pursuant to section 42.07 of that lease, each unit owner was required to make monthly payments to cover its share of both rent and common charges to the Board of Managers, who then forwarded the rent due under the ground lease to BPCA.

In October 1991, Mr. Pesce encountered financial difficulties, and defaulted in his payment of rent, common charges, and his mortgage. The condominium Board of Managers delivered a default certificate to the BPCA, which then notified Dime, giving it the opportunity to cure. Meanwhile, in July 1991, before the issuance of the default certificate, Mr. Pesce declared bankruptcy. He was granted a discharge on February 5, 1992. BPCA was not notified of the bankruptcy proceeding, nor was it named as a creditor. The record does not indicate whether the bankruptcy trustee accepted or rejected Mr. Pesce's interest in the condominium unit as part of the bankrupt's estate.

On May 13, 1992, Dime commenced this action to foreclose on its mortgage. BPCA was granted permission to intervene, on consent, to assert a competing claim for past rent due under the ground lease. The trial court found that based upon Real Property Law § 339-z (the Condominium Act), Dime's interest as first mortgagee took priority over both the Board of Managers' lien for common charges, and BPCA's lien for past-due rent. Our review of the documents binding these parties in a unique relationship, incorporating aspects of both tenancy and property ownership, within the framework of existing property and bankruptcy law, leads us to conclude that this order of priorities should not be disturbed.

Pursuant to section 42.09 (c) of the ground lease and article 28 of the Declaration of Condominium, BPCA agreed to be bound by the provisions of the Condominium Act (Real Property Law §§ 339-d—339-ii). As germane to the establishment of priorities here, Real Property Law § 339-z provides as follows:

"*Lien for common charges; priority; exoneration of grantor and grantee*

"The board of managers, on behalf of the unit owners, shall have a lien on each unit for the unpaid common charges thereof, together with interest thereon, prior to all other liens

except only \* \* \* (ii) *all sums unpaid on a first mortgage of record"* (emphasis supplied).

Since both Real Property Law § 339-e (the Condominium Act)[4] and section 42.01[5] of the ground lease indicate that common charges include the unit owner's proportionate share of the ground lease rent, Real Property Law § 339-z establishes that Dime's interest as first mortgagee of record is superior to both the Board of Managers' lien for common charges, and BPCA's landlord's lien (*see, Bankers Trust Co. v Board of Mgrs. of Park 900 Condominium*, 81 NY2d 1033). Section 42.09 (c) of the ground lease, as amended, similarly provides that Dime's interest as first mortgagee is superior to BPCA's landlord's lien. As between BPCA and the Board of Managers, section 42.09 (h) of the lease provides that the Board of Managers' lien for common charges has priority.[6]

The fact that the Unit Assignment Agreement was not explicitly either assumed or rejected by the bankruptcy trustee does not alter this result. Although Mr. Pesce's "qualified leasehold condominium" unit was grounded upon a long-term lease between Hudson and BPCA, it does not necessarily follow that this relatively rare type of condominium, which pursuant to the Condominium Act "for all purposes[,] constitute[s] real property" (Real Property Law § 339-g), should be treated as identical to a pure executory contract under Bankruptcy Code (11 USC) § 365 (d) (3) and (4).

Even were we to assume Mr. Pesce's interest was to be treated as analogous to a lessee's interest in a "true lease" under the Bankruptcy Code, and that the bankruptcy trustee

---

4. Real Property Law § 339-e (2) defines "common charges" as each unit's proportionate share of the common expenses in accordance with its common interest. Real Property Law § 339-e (5) defines "common interest", for purposes of a qualified leasehold condominium, as the "proportionate undivided leasehold interest in the common elements appertaining to each unit, as expressed in the declaration".

5. Section 42.01 of the lease defines "common charges" as "Rental and assessments payable to the Board of Managers by the Unit owners for the purpose of meeting the costs and expenses in connection with the repair, maintenance, replacement, restoration and operation of and any alteration, addition or improvement to the common elements".

6. Section 42.09 (h) of the lease provides that: "If, as a result of [an] action by [BPCA] against a Defaulting Unit Owner, [BPCA] or any nominee or designee of [BPCA] shall become the owner of such Defaulting Unit Owner's Unit, [BPCA] or such nominee or designee shall, upon [BPCA's] acquisition of such unit, promptly pay to the Board of Managers an amount equal to the difference between all accrued but unpaid Common Charges with respect to such Unit and the [amount owed by the Unit Owner to BPCA]".

indicated a rejection of the Unit Assignment Agreement by its failure to administer this asset, such rejection would not have necessarily destroyed the leasehold and Dime's interest in it. Persuasive authority supports the contrary conclusion that rejection of this asset by the bankruptcy trustee does not terminate the leasehold, but instead merely places it outside the bankruptcy proceeding (see, *Matter of Garfinkle*, 577 F2d 901, 904 [5th Cir]).

Accordingly, the order of the Supreme Court, New York County (William Davis, J.), entered August 10, 1994, which, *inter alia*, granted in part plaintiff's motion for summary judgment of foreclosure, granted in part defendant Board of Managers' cross motion for a judgment declaring that the interests of plaintiff and of the Board of Managers are superior to the interest of defendant-intervenor Battery Park City Authority in the subject condominium lease, and denied defendant-intervenor's cross motion for summary judgment, should be affirmed, without costs.

RUBIN, ASCH, WILLIAMS and MAZZARELLI, JJ., concur.

Order, Supreme Court, New York County, entered August 10, 1994, affirmed, without costs.